UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARYLOU DANTONIO,

    Plaintiff,

    v.

SOUTHWEST EDUCATIONAL
DEVELOPMENT LABORATORY (SEDL);
and JILL SLACK,

    Defendants.

Case No. C10-1193RSL

ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS FOR LACK
OF PERSONAL JURISDICTION

## I. INTRODUCTION

This matter comes before the Court on motions filed by defendants Southwest Educational Development Laboratory ("SEDL") and Jill Slack ("Dr. Slack") to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and improper venue under Fed R. Civ. P. 12(b)(3). SEDL Mot. to Dismiss (Dkt. # 21); Slack Mot. to Dismiss (Dkt. # 23). Defendant SEDL also moved to dismiss plaintiff's unfair competition claim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. SEDL Mot. to Dismiss (Dkt. # 21) at 13-15. Finally, Dr. Slack moved for attorney's fees in the event she prevailed on her motion to dismiss. Slack Mot. to Dismiss (Dkt. # 23) at 7-8. The Court GRANTS defendants' motions to dismiss for lack of personal jurisdiction.

ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS - 1

## II. BACKGROUND

Plaintiff, a Washington resident, is an education professor who researches topics such as critical thinking and curriculum development.  First Amended Complaint ("FAC") (Dkt. # 3) ¶¶ 3, 10.  SEDL, formerly known as Southwest Educational Development Corporation, is a Texas entity that develops and disseminates various education-related publications.  FAC ¶¶ 3, 12.  Dr. Slack is a Louisiana Resident and a program director at the Louisiana State Department of Education.  FAC ¶¶ 4, 20.  Before going to work for the Department of Education in 2008, Dr. Slack worked for SEDL in its Metairie, Louisiana office.  Slack Decl. (Dkt. # 24) ¶ 6.

Dr. Slack first met plaintiff in 1991 when she took one of plaintiff's courses at the University of New Orleans.  Slack Decl. (Dkt. # 24) ¶ 4.  The two developed a professional relationship, and plaintiff later served as Dr. Slack's doctoral adviser.  FAC ¶ 17; Slack Decl. (Dkt. # 24) ¶ 4-5, 7.  As a result, Dr. Slack became familiar with plaintiff's writings, including a 1990 book entitled "How Can We Create Thinkers: Questioning Strategies That Work For Teachers."  FAC ¶ 17; Slack Decl. (Dkt. # 24) ¶ 4-5, 7 (hereinafter "plaintiff's book").

In 2009, plaintiff discovered that sections from her book had made their way into materials allegedly published or distributed by Dr. Slack and SEDL.  Dantonio Decl. (Dkt. # 32) ¶ 5.  Although some of the infringing works stated that they had been "[a]dapted from" plaintiff's book, see, e.g., Tarleton Decl. (Dkt. # 51), Ex. 5, plaintiff claims that, at the very least, she never authorized any reproductions.  FAC ¶ 24; Dantonio Decl. (Dkt. # 50) ¶ 10.  Plaintiff filed a complaint alleging, among other things, that Dr. Slack and SEDL had infringed the copyright to her book.[1]  FAC ¶¶ 10, 17-21, 25, 27-39.  Dr. Slack and SEDL both moved to dismiss for lack of personal jurisdiction.  Dkt. # 21 (SEDL); Dkt. # 23 (Dr. Slack).  On the day plaintiff's response was due, plaintiff requested leave to conduct jurisdictional discovery.  Dkt. # 30.  The Court granted the motion.  Dkt. # 42.

---

[1] See U.S. Copyright Registration No. TX-4-771-776.

ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS - 2

## III. PERSONAL JURISDICTION

**A. Legal Standard**

In the absence of an applicable federal statute, the Court must assess a party's amenability to suit by reference to the law of the forum state. Peterson v. Kennedy, 771 F.2d 1244, 1262 n.12 (9th Cir. 1985). Washington's long-arm statute "extends jurisdiction to the limit of federal due process." Shute v. Carnival Cruise Lines, 113 Wn.2d 763, 771 (1989). Because the long-arm statute is coextensive with the outer limits of federal due process, the Court must determine only whether the exercise of jurisdiction comports with federal constitutional requirements. Chan v. Soc'y Expeditions, Inc., 39 F.3d 1398, 1405 (9th Cir. 1994).

The Court's exercise of personal jurisdiction over a non-resident defendant will comport with due process only if the defendant has "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation omitted). "Unless a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be 'present' in that forum for all purposes, a forum may exercise only 'specific' jurisdiction—that is, jurisdiction based on the relationship between the defendant's forum contacts and plaintiff's claims." Menken v. Emm, 503 F.3d 1050, 1056-57 (9th Cir. 2007). Here, only specific jurisdiction is at issue.[2]

Because the Court must decide this motion without the benefit of an evidentiary hearing, plaintiff "need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1127 (9th Cir. 2010). Plaintiff can make a prima facie showing by alleging facts that, if true, would support jurisdiction over the defendant. Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995).

---

[2] In her opposition, plaintiff appears to concede the Court's inability to exercise general jurisdiction. See Opp'n (Dkt. # 49) at 7 n.3 ("A court may exercise general or specific jurisdiction over a nonresident defendant. Here, specific jurisdiction is appropriate.") (citation omitted).

"[U]ncontroverted allegations in [plaintiff's] complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor." <u>Rio Props., Inc. v. Rio Int'l Interlink</u>, 284 F.3d 1007, 1019 (9th Cir. 2002).  However, "plaintiff cannot simply rest on the bare allegations of [her] complaint." <u>Schwarzenegger v. Fred Martin Motor Co.</u>, 374 F.3d 797, 800 (9th Cir. 2004) (quotation omitted).  Plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." <u>Amba Marketing Sys. Inc. v. Jobar Int'l, Inc.</u>, 551 F.2d 784, 787 (9th Cir. 1977).

**B. Specific Personal Jurisdiction**

The Court applies a three-pronged test to determine whether the exercise of specific personal jurisdiction comports with due process:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

<u>Schwarzenegger</u>, 374 F.3d at 802 (quoting <u>Lake v. Lake</u>, 817 F.2d 1416, 1421 (9th Cir. 1987)).  If the plaintiff satisfies the first two prongs, the burden shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable.  <u>Id.</u>  For the reasons that follow, the Court finds that plaintiff has failed to satisfy either of the first two prongs of the Ninth Circuit's test.

**1. Purposeful Direction**

The Court analyzes purposeful direction under the three-pronged "effects test" derived from <u>Calder v. Jones</u>, 465 U.S. 783 (1984).  The <u>Calder</u> effects test directs the Court to ask whether the defendant "(1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows

ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS - 4

is likely to be suffered in the forum state." Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082, 1087 (9th Cir. 2000).[3]

### *(a) Intentional Act*

Plaintiff alleges that defendants committed numerous acts of copyright infringement. See FAC ¶¶ 13-15, 17-21, 23-25, 27-31; Dantonio Decl. (Dkt. # 50) ¶¶ 4-10, Exs. 5-10. Accordingly, plaintiff has satisfactorily alleged an intentional act. See Brayton, 606 F.3d at 1128 (intentional act element "easily satisfied" in cases of alleged copyright infringement).

### *(b) Express Aiming*

The Ninth Circuit defines express aiming as "wrongful conduct targeted at a plaintiff whom the defendant *knows to be a resident of the forum state*." Bancroft & Masters, 223 F.3d at 1087 (emphasis added).[4] Here, plaintiff has not provided any facts showing that either SEDL or Dr. Slack possessed actual knowledge of her Washington residence during any relevant time

---

[3] Where the underlying claim is an intentional tort, the Court applies a "purposeful direction" analysis rather than a "purposeful availment" analysis. See Brayton, 606 F.3d at 1128 (9th Cir. 2010). Plaintiff concedes the applicability of the purposeful direction analysis. See Opp'n (Dkt. # 49) at 8. Nonetheless, she cites facts that could only support jurisdiction under a purposeful availment analysis. For example, plaintiff supplies a declaration describing a 2009 business trip to Washington State taken by a SEDL employee. Tarleton Decl. (Dkt. # 51), Ex. 9 (Kesler Decl.). This trip apparently revolved around an "agreement" reached by SEDL and the Washington Alliance for Better Schools (WABS). Id. Plaintiff has not provided any evidence showing how this agreement was related to the authorship, sale, or distribution of the allegedly infringing materials. Thus, plaintiff has not shown how SEDL's relationship with WABS, if any, supports her case for purposeful direction.

[4] Plaintiff need not demonstrate that defendants had actual knowledge of her *precise* geographic location. However, plaintiff must show that defendants had actual knowledge of the her residence somewhere within the forum state. See Bancroft & Masters, 223 F.3d at 1087; see also Sky Capital Group, LLC v. Rojas, No. C09-83EJL, 2009 WL 1197956 (D. Idaho Apr. 30, 2009) ("Regardless of whether the Defendants had actual knowledge of where [plaintiff's] servers were located, the Defendants' prior employment dealings with [plaintiff] evidences that they knew [plaintiff] to be located in Idaho."); The Bear Mill, Inc. v. Teddy Mountain, Inc., No. C07-492EJL-LMB, 2008 WL 2323483 (D. Idaho May 7, 2008) ("Defendant had actual knowledge that [plaintiff's] principal place of business is in [the forum state]."); Facebook, Inc. v. ConnectU LLC, No. C07-1389RS, 2007 WL 2326090 (N.D. Cal. Aug. 13, 2007) ("[Defendants] may not have had actual knowledge as to [plaintiff's] physical location, but they had sufficient knowledge expressly to aim their conduct at it through the Internet.").

ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS - 5

1 period.⁵ Instead, plaintiff merely alleges that defendants infringed her copyright "knowing of
2 [her] residence in this district and the affects [sic] of such infringement would be felt in this
3 district . . . ." FAC ¶ 8. Even after conducting jurisdictional discovery, plaintiff still provided
4 only bare assertions that defendants knew where she lived. Opp'n (Dkt. # 49) at 8 ("SEDL and
5 Slack both knew of Plaintiff's residence in Washington State."); see also id. at 1 ("Harm to
6 Plaintiff in this state was foreseeable as both SEDL and Slack knew Plaintiff resides in
7 Washington."). The Ninth Circuit's definition of express aiming makes clear that plaintiff
8 cannot simply allege that harm was foreseeable in the forum state. Indeed, as the Ninth Circuit
9 has repeatedly held, "something more" is required—namely, "conduct directly targeting the
10 forum." Rio Props., 284 F.3d at 1020; see also Brayton, 606 F.3d at 1129.

11 The only evidence supporting plaintiff's allegation of actual knowledge is a 2009 e-mail
12 conversation between plaintiff and Dr. Slack. See Tarleton Decl. (Dkt. # 51), Exs. 6-7; Slack
13 Supp'l Decl. (Dkt. # 54), Ex. A. In each of her emails, plaintiff provided two telephone numbers
14 with (425) area codes. Slack Supp'l Decl. (Dkt. # 54), Ex. A. Although a quick investigation
15 may have alerted Dr. Slack that the (425) area code corresponds to a Washington State telephone
16 number, plaintiff provided no evidence showing that Dr. Slack actually discovered this fact.⁶
17 Moreover, in her e-mail dated Jan. 19, 2009, plaintiff wrote that she could be reached at a
18 Minneapolis mailing address. Id. This fact undermines plaintiff's allegation that Dr. Slack
19 knew of plaintiff's Washington residence. At the same time, it bolsters Dr. Slack's statement
20 that she "believed [plaintiff] to be a resident of state of Minnesota" at all relevant times. Id. ¶ 2.

21 While plaintiff struggles to substantiate her claim of actual knowledge, defendants have

---

23    ⁵ In a supplemental filing, plaintiff cites Righthaven LLC v. Mostofi, No. C10-1066-KJD-GWF,
24 98 U.S.P.Q.2d 1373 (D. Nev. Mar. 22, 2011). Notice of Supp'l Authority (Dkt. # 57), Attach. 1. In
   Righthaven, the court found that the defendant could be "imputed with the common knowledge" that
25 plaintiff published the *Las Vegas Review Journal* in Nevada. Id. at 1375. Here, plaintiff has neither
   alleged nor provided evidence that her residence was a matter of common knowledge.

26
     ⁶ Nor is this fact a matter of "common knowledge" under Righthaven. See supra, note 5.
27
ORDER GRANTING DEFENDANTS'
28 MOTIONS TO DISMISS - 6

provided evidence that directly contradicts plaintiff's bare allegation. SEDL's director states that "no SEDL management personnel knew that Dr. Dantonio was a Washington resident until after the allegedly infringing materials were prepared, distributed, and posted on SEDL's website." Hoover Supp'l Decl. (Dkt. # 56) ¶ 3. Likewise, Dr. Slack claims that she did not learn of plaintiff's Washington residency until "well after" she created the allegedly infringing documents. Slack Supp'l Decl. (Dkt. # 54) ¶ 2. Although plaintiff repeatedly argues that defendants knew of her Washington residence, these conclusory allegations need not be taken as true when viewed in light of defendants' uncontroverted evidence. See Schwarzenegger, 374 F.3d at 800; Amba Marketing Sys., 551 F.2d at 787. Plaintiff's failure to produce evidence of actual knowledge ends the inquiry.

However, plaintiff offers an alternative argument for express aiming based on the Ninth Circuit's recent decision in Brayton. In Brayton, the Court of Appeals held that the express aiming requirement could be satisfied through evidence that a defendant "individually targeted" the plaintiff by misusing plaintiff's intellectual property on its website for the purpose of competing with the plaintiff in the forum state. Brayton, 606 F.3d at 1129-30. Attempting to take advantage of this holding, plaintiff argues that defendants "individually targeted" her by making commercial use of her book "in unfair competition" for plaintiff's Washington State clients. Opp'n (Dkt. # 49) at 11.

Brayton is inapplicable. In Love v. Associated Newspapers, Ltd., 611 F.3d 601 (9th Cir. 2010), the Ninth Circuit cautioned that Brayton "merely held that the defendant's 'conclusory denial' that its actions were not aimed at prospective clients in Northern California did 'not rebut' the plaintiff's fact-based allegation to the contrary." 611 F.3d at 609 n.4 (quoting Brayton, 606 F.3d at 1129-30). Here, in contrast, plaintiff has not made any fact-based allegations supporting her claim that defendants engaged in targeted competition with her.

Plaintiff relies almost exclusively on a declaration in which her attorney claims to have attached "a true and correct copy of a web page from the Spokane School District in Washington

ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS - 7

state of a SEDL document authored by defendant Jill Slack . . . ." Tarleton Decl. (Dkt. # 51) ¶ 5 (hereinafter the "Spokane document"). According to plaintiff, "[e]ven if this Court were to look at only SEDL and Slack's infringement found in Washington at the Spokane School District, personal jurisdiction would be proper on this basis alone." Opp'n (Dkt. # 49) at 14. The Court disagrees. Plaintiff's attorney has no personal knowledge of who authored the Spokane document, and, therefore, the Court strikes the terms "SEDL" and "authored by defendant Jill Slack" from paragraph five of the attorney's declaration. See Tarleton Decl. (Dkt. # 51) ¶ 5. Without any evidence of authorship by SEDL or Dr. Slack, plaintiff is left with only the bare allegation that defendants unfairly competed for her Washington State clients.

In contrast, defendants have presented evidence that directly contradicts plaintiff's bare allegation of targeted competition. First, SEDL points out that the Spokane document states on its face that it was "[*a*]*dapted from* the work of Jill B. Slack, Ph.D. Southeast Comprehensive Assistance Center Southwest Educational Development Laboratory (SEDL)." Hoover Supp'l Decl. (Dkt. # 56) ¶ 4. SEDL does not know who authored the document or authorized the Spokane School District to post it on the District's website. Id. Similarly, Dr. Slack disclaims all knowledge regarding the document's origin. See Slack Decl. (Dkt. # 24) ¶¶ 14-15. In fact, she states that she has "never placed information or materials related to or referenced in [plaintiff's book] on the Internet . . . ." Id. ¶ 14.

As a final alternative argument for express aiming, plaintiff contends that "[i]nfringing materials were also on SEDL's website for distribution across the country, including into Washington." Opp'n (Dkt. # 49) at 13. To assess whether the operation and maintenance of a website qualifies as purposeful direction, the Court applies the sliding scale approach approved in Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 418–19 (9th Cir. 1997) (adopting the approach set forth in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119 (W.D. Pa. 1997)). Under the sliding scale approach, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial

ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS - 8

activity that an entity conducts over the Internet." Cybersell, 130 F.3d at 419 (quoting Zippo, 952 F.Supp. at 1124).

Here, plaintiff's only evidence of defendants' internet contacts consists of the following statement in her declaration:

> I am aware that the SEDL and Dr. Slack materials that infringe my Copyrighted Work have been available for download from SEDL's website and others' websites that have received copies of the infringing works, and that SEDL and Dr. Slack's intentional infringement of my Copyrighted Work has extended into the State of Washington, through, for example, downloads of infringing material from the Internet.

Dantonio Decl. (Dkt. # 32) ¶ 9. It is unclear how plaintiff could have personal knowledge of materials downloaded in Washington by anyone other than herself. SEDL admits placing the allegedly infringing documents on the "Free Resources" section of its website (thus making them available for free download). Hoover Decl. (Dkt. # 22) ¶ 24. However, SEDL's website "does not allow SEDL to determine how many actual downloads of the material may have occurred or where the persons who downloaded that material reside." Id.

Under the sliding scale approach, plaintiff still needs "something more to indicate that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state." Cybersell, 130 F.3d at 418 (internal quotation marks omitted). Without any evidence connecting the operation of SEDL's website to her infringement claims, plaintiff cannot satisfy this "something more" requirement. See, e.g., Rio Props., 284 F.3d at 1020 (finding "something more" where, in addition to operating a passive website, defendant ran radio and print advertisements in the forum state). The Court recognizes that SEDL admittedly made $8,519.54 in internet sales to Washington residents between 2006 and 2010. Hoover Decl. (Dkt. # 22) ¶ 20. Although plaintiff never addresses the issue, evidence of SEDL's internet sales does not change the outcome. First, SEDL presents uncontroverted evidence that none of these sales included any of the allegedly infringing materials. Id. Second, SEDL presents uncontroverted evidence that such sales accounted for a mere 0.01% of its total revenue from 2006 to 2010.

ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS - 9

Overall, the Court finds that SEDL's internet contacts are not of the "nature and quality" needed to support specific personal jurisdiction over the defendants. Cybersell, 130 F.3d at 419.

None of plaintiff's conclusory arguments in support of express aiming survives when measured against defendants' uncontroverted evidence. Plaintiff has failed the express aiming prong.

*(c) Foreseeable Harm*

Plaintiff cannot allege foreseeable harm without first demonstrating that defendants knew of her residence in Washington State. See Blue Nile, Inc. v. Ideal Diamond Solutions, Inc., No. C10-380TSZ, 2011 WL 830724, at *3 (W.D. Wash. Mar. 1, 2011) ("[Plaintiff] has not alleged or submitted any evidence that suggests that [defendant] knew that [plaintiff] resides in the Western District of Washington. Accordingly, [plaintiff] has not pleaded facts to establish the foreseeable harm element of the purposeful direction analysis."). Here, plaintiff has not provided any evidence that defendants actually knew of her residence in Washington. Therefore, plaintiff has failed the foreseeable harm prong.

**2. Plaintiff's claim must arise out of defendants' forum-related activities**

A claim arises out of a defendant's contacts with the forum state when the claim would not have arisen "but for" those contacts. Panavision Int'l v. Toeppen, 141 F.3d 1316, 1322 (9th Cir. 1998) (quotation omitted).

Here, plaintiff argues that "[b]ut for SEDL and Slack's conduct in infringing Plaintiff's Copyrighted Work and trademark rights (including in Washington), Plaintiff would not have suffered harm in Washington." Opp'n (Dkt. # 49) at 14. Plaintiff also argues that the Spokane document provides the nexus between plaintiff's claims and defendants' forum-related contacts. Id. at 1, 4, 6, 11, 13-14, 20. As described above, however, plaintiff has not provided evidence showing that either SEDL or Dr. Slack authored or distributed the Spokane document. Even with the benefit of jurisdictional discovery, plaintiff could not explain defendants' connection to this document. Plaintiff only argues that defendants placed the Spokane document in the stream of

ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS - 10

commerce, and that it somehow found its way to a Spokane website.[7]  Plaintiff has not demonstrated that her claim would have arisen but for defendants' contacts with the forum state.

### 3.  Exercise of jurisdiction must be reasonable

Plaintiff argues that "[e]xercising personal jurisdiction over SEDL and Slack is entirely reasonable" and that "the reasonableness of personal jurisdiction lessens Plaintiff's burden under the first two prongs of the specific jurisdiction analysis."  Opp'n (Dkt. # 49) at 15.  For the reasons stated below, the Court disagrees.

The reasonableness of the Court's decision to exercise personal jurisdiction turns on "(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum."  Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1132 (9th Cir. 2003) (citations omitted).

#### *(a)  Extent of Defendants' Purposeful Interjection into the Forum State's Affairs*

Plaintiff argues that "SEDL and Slack have already shown that they are fully capable of travelling [sic] and interjecting themselves into Washington."  Opp'n (Dkt. # 49) at 16.  As evidence, plaintiff points to the fact that Dr. Slack twice attended a conference in Washington State during the last decade.  Tarleton Decl. (Dkt. # 51) ¶ 4, Exs. 3-4.  Plaintiff also provides evidence that defendants have "entered or attempted to enter contractual relationships with Washington entities."  Opp'n (Dkt. # 49) at 16; Tarleton Decl. (Dkt. # 51), Ex. 9 (Kesler Decl.) (describing a 2009 business meeting between a former SEDL employee and an educational nonprofit corporation that took place in Washington State).

---

[7] As discussed below, the Court rejects plaintiff's stream of commerce arguments.

ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS - 11

Defendants may have "dipped their toes in [the forum] to test the waters for doing business, but their actions do not amount to a foot planted in the state for purposes of personal jurisdiction." King v. Am. Family Mut. Ins. Co., 632 F.3d 570, 580 (9th Cir. 2011) (filing of application to transact business in the state and appointment of agent for service of process were insufficient to support exercise of personal jurisdiction).  Neither SEDL nor Dr. Slack has offices or employees in the State of Washington, owns any real property in the State of Washington, or has advertised in the State of Washington.  Hoover Decl. (Dkt. # 22) ¶¶ 14-17; Slack Decl. (Dkt. # 24) ¶¶ 12, 16.  This factor weighs in favor of defendants.

### *(b) Burden on Defendants of Defending in the Forum*

Plaintiff argues that the burden on SEDL and Slack to litigate in Washington is low. Opp'n (Dkt. # 49) at 16-17.  However, SEDL is a Texas corporation and Dr. Slack is a Louisiana Resident.  It is as burdensome for defendants and their witnesses to travel to Washington as it is for plaintiff and her witnesses to travel to Texas or some other venue in the Southeast.  "Where the burdens are equal, the second factor tips in favor of [defendants] because the law of personal jurisdiction is asymmetrical and is primarily concerned with the defendant's burden."  Terracom v. Valley Nat. Bank, 49 F.3d 555, 561 (9th Cir. 1995).  Moreover, Dr. Slack states that she has "very limited resources" and that "defending this action in the State of Washington has been extremely stressful and costly" for her.  Slack Decl. (Dkt. # 24) ¶ 17.  This factor tips in favor of defendants.

### *(c) Extent of Conflict with the Sovereignty of Defendants' State*

Nothing in the record suggests the presence of any sovereignty conflicts.  Moreover, "[b]ecause the alternative forums are within the United States, any conflicting sovereignty interests are best accomodated through choice-of-law rules rather than jurisdictional rules." Gray & Co. v. Firstenberg Mach. Co., Inc., 913 F.2d 758, 761 (9th Cir. 1990).  Accordingly, this factor is neutral.

ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS - 12

### *(d) Forum State's Interest in Adjudicating the Dispute*

Washington has an interest in adjudicating this case because it is obligated to protect its residents from the tortious acts of non-resident defendants. Terracom, 49 F.3d at 561; see also Attachmate Corp. v. Pub. Health Trust of Miami-Dade County Fla., 686 F. Supp. 2d 1140, 1149 (W.D. Wash. 2010) ("Washington has a strong interest in adjudicating this dispute as [plaintiff] is a Washington corporation that was allegedly harmed by [defendant's] copyright infringement"). This factor weighs in favor of plaintiff.

### *(e) Most Efficient Judicial Resolution of the Controversy*

The Court determines the most efficient forum by "looking at where the witnesses and the evidence are likely to be located." Terracom, 49 F.3d at 561. The witnesses and evidence are likely to be spread equally across Washington, Texas, and Louisiana. Accordingly, this factor is neutral.

### *(f) Importance of the Forum to Plaintiff's Interest in Convenient and Effective Relief*

Plaintiff argues that litigating outside her home state would be burdensome and that, "absent compelling reasons to the contrary, a plaintiff's choice of forum should be honored." Opp'n (Dkt. # 49) at 17. "However, in this circuit, the plaintiff's convenience is not of paramount importance." Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1116 (9th Cir. 2002). This factor tips in favor of plaintiff.

### *(g) Existence of an Alternative Forum*

Plaintiff argues that "SEDL and Slack have failed to identify an alternative forum better suited to adjudicate this dispute . . . ." Opp'n (Dkt. # 49) at p. 17. However, it is "plaintiff [who] bears the burden of proving the unavailability of an alternative forum." Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1490 (9th Cir. 1993). Plaintiff has not shown why she could not litigate in Texas or Louisiana. "Doubtless [she] would prefer not to, but that is not the test." Roth v. Garcia Marquez, 942 F.2d 617, 625 (9th Cir. 1991). This factor weighs in favor of defendants.

ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS - 13

*(h) Balancing the Factors*

Of the seven factors, three favor defendants, two favor plaintiff, and two are neutral. On balance, plaintiff has failed to demonstrate that exercising personal jurisdiction over SEDL and Dr. Slack is entirely reasonable.

### 4. Personal Jurisdiction Under a Stream of Commerce Theory

As a final attempt, plaintiff argues for personal jurisdiction under a stream of commerce theory. According to plaintiff, "SEDL and Slack's placement of their infringing materials into the stream of commerce when it knew or should have known that a termination point for materials was Washington, constitutes sufficient contacts with Washington to support this Court's exercise of personal jurisdiction under a stream of commerce test." Opp'n (Dkt. # 49) at 13. Under the stream of commerce test, the Court may assert jurisdiction "where a defendant delivers its products into the stream of commerce with the expectation that they will reach the forum state." Hedrick v. Daiko Shoji Co., 715 F.2d 1355, 1358 (9th Cir. 1983).

Here, plaintiff has not provided any facts showing that defendants placed the Spokane document—or any other infringing document—into the stream of commerce. Instead, she merely argues that "infringing materials *attributed to* both SEDL and Slack were actually distributed into Washington, including to the Spokane School District." Opp'n (Dkt. # 49) at 13 (emphasis added). These materials, plaintiff continues, "*were found* on the Spokane School District Professional Development website and *were made* available to all teachers within Washington via the Internet." Id. All plaintiff knows is that infringing documents somehow made their way into Washington.

Meanwhile, defendants' evidence suggests that defendants never sent infringing material to Washington State through the stream of commerce. See Slack Decl. (Dkt. # 24) ¶¶ 14-15 (indicating that Dr. Slack neither placed any infringing materials on the internet nor "caused the distribution" of these materials in the State of Washington); Hoover Decl. (Dkt. # 22) ¶ 20 (indicating that none of SEDL's internet sales from 2006 to 2010 included infringing materials).

ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS - 14

Plaintiff's failure to explain defendants' connection to any infringing document allegedly distributed or downloaded within Washington State, coupled with defendants' denials of any such connection, leads this Court to reject plaintiff's stream of commerce claim.  See Holland America Line Inc. v. Wartsila North Am., Inc., 485 F.3d 450, 459 (9th Cir. 2007) ("[Respondent] itself has not put any products into the stream of commerce that might have ended up in the forum . . . . That alone ends the inquiry.").

## IV.  REMAINING ISSUES

Because the Court lacks personal jurisdiction over both defendants, it need not decide whether venue would have been proper in this District or whether plaintiff stated a claim for Federal False Designation of Origin and Unfair Competition.

## V.  ATTORNEY'S FEES

Dr. Slack has moved for attorney's fees for the time spent preparing her motion to dismiss.  Slack Mot. to Dismiss (Dkt. # 23) at 7-8.  The Washington State long-arm statute gives the Court discretion to award reasonable fees:

> In the event the defendant is personally served outside the state on causes of action enumerated in this section, and prevails in the action, there *may* be taxed and allowed to the defendant as part of the costs of defending the action a reasonable amount to be fixed by the court as attorneys' fees.

RCW 4.28.185(5) (emphasis added).  "Unlike many fee shifting statutes which attempt only to punish frivolous litigation or encourage meritorious litigation, RCW 4.28.185(5) balances the dual purposes of recompensing an out-of-state defendant for its reasonable efforts while also encouraging the full exercise of state jurisdiction."  Scott Fetzer Co. v. Weeks, 122 Wn.2d 141, 149 (1993).  Plaintiff urges the Court to resolve these competing interests in her favor, since she "had a good faith basis for asserting jurisdiction over Slack in Washington" and because "[t]here is no credible suggestion that Plaintiff attempted to harass Slack by filing in Washington."  Opp'n (Dkt. # 49) at 19.  Dr. Slack claims that she "needlessly incurred thousands of dollars in fees contesting jurisdictional allegations that Plaintiff knew or should have known could not be

ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS - 15

substantiated." Slack Reply (Dkt. # 53) at 2. However, the Court agrees with plaintiff that her jurisdictional arguments were neither frivolous nor completely incapable of substantiation. Accordingly, the Court denies Dr. Slacks motion for fees. See also O.B. Williams Co. v. S.A. Bendheim West, Inc., No. C08-1155JLR, 2010 WL 3430404, at *3 (W.D. Wash. Aug. 30, 2010) (limiting an award of attorney's fees where opposing party's lawsuit "was neither frivolous nor brought to harass.").

## VI. CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendants' motions to dismiss for lack of personal jurisdiction. Dkt. # 21 (SEDL); Dkt. # 23 (Dr. Jill Slack). The Court also DENIES Dr. Slack's motion for attorney's fees. Plaintiff's action is DISMISSED WITHOUT PREJUDICE to permit refiling in another jurisdiction where personal jurisdiction over defendants may be established.

DATED this 26th day of May, 2011.

Robert S. Lasnik
United States District Judge